852 P.2d 1248

**STATE of Arizona, Respondent,**

**v.**

**Randy Jerome HARRIS, Petitioner.**

**No. 1 CA-CR 91-1641-PR.**

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 18, 1993.

Review Denied June 15, 1993.

Richard M. Romley, Maricopa County Atty., by Arthur Hazelton, Deputy County Atty., Phoenix, for respondent.

Dean W. Trebesch, Maricopa County Public Defender by Charles R. Krull, Phoenix, for petitioner.

## OPINION

TOCI, Judge.

This is a petition for review of the trial court's denial of post-conviction relief. The defendant's direct appeal raised a claim that, under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), defendant was denied equal protection under the United States Constitution because the prosecutor used peremptory challenges to exclude jurors of defendant's race. Defendant requested the Arizona Supreme Court remand the case to the trial court for a determination of whether the prosecutor could show a neutral explanation for the use of peremptory strikes. The court denied defendant relief, holding that a *Batson* objection is waived unless made after the state's exercise of its peremptory strikes and before the trial court excuses the challenged jurors. *State v. Harris*, 157 Ariz. 35, 754 P.2d 1139 (1988).

The United States Supreme Court later held in *Ford v. Georgia*, 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991), that a state may, by procedural rule, preclude review of a *Batson* claim made after the jury has been selected if the rule is a "firmly established and regularly followed State practice." *Ford*, 498 U.S. at 423–24, 111 S.Ct. at 857. Defendant then filed a petition for post-conviction relief claiming that the Arizona Supreme Court's decision in *State v. Harris* did not comply with *Ford*. He argued that the rule cited by the court—that a *Batson* objection must be made before the trial court excuses the challenged jurors—was not a "firmly established and regularly followed State practice." After an evidentiary hearing, the trial court denied defendant's petition and motion for rehearing.

In this petition for review, the sole issue is whether the trial court abused its discretion in finding that the Arizona Supreme Court, in defendant's direct appeal, relied upon a "firmly established and regularly followed state practice" to bar consideration of the defendant's *Batson* claim as untimely raised. *See Ford*. We find that Arizona had a rule, first announced in *State v. Arnett*, 119 Ariz. 38, 50, 579 P.2d 542, 544 (1978), that parties must make objections to the composition of the jury before the trial court impanels the jury and excuses the challenged jurors. We conclude, therefore, that the procedural rule cited by the Arizona Supreme Court to bar defendant's *Batson* claim was firmly established and regularly followed before defendant's trial. Thus, we affirm the trial court's denial of the defendant's petition for post-conviction relief.

## FACTS AND PROCEDURAL HISTORY

In 1985, a jury convicted Randy Jerome Harris ("defendant"), a black man, of the following offenses: one count of first-degree burglary, a dangerous, aggravated, class 2 felony; two counts of kidnapping, both dangerous, aggravated, class 2 felonies; two counts of armed robbery, both dangerous, aggravated class 2 felonies; and one count of first-degree murder, a class 1 felony. The court sentenced defendant to life without release for twenty-five years, plus three consecutive twenty-one year terms of imprisonment.

After the voir dire examination, the prosecutor exercised two peremptory challenges to strike two potential jurors who were black. Although these challenges resulted in the impaneling of an all-white jury, defense counsel did not object to the prosecutor's use of these challenges until the day after the trial court impaneled the jury.

Shortly after defendant's conviction, the United States Supreme Court held, in *Batson v. Kentucky*, that a black criminal defendant could make a prima facie case of

an equal protection violation with evidence that the prosecutor used peremptory challenges to strike members of the defendant's race from the jury. Defendant's appeal to the Arizona Supreme Court argued that the prosecutor had exercised his peremptory challenges in a racially discriminatory way. *See State v. Harris*, 157 Ariz. 35, 754 P.2d 1139 (1988). The supreme court held, however, that because defense counsel did not object to the prosecutor's peremptory challenges until after the trial judge excused the venire, he waived the issue for appeal purposes. *Id.*, 157 Ariz. at 36, 754 P.2d at 1140.

In 1990, defendant filed a petition for post-conviction relief arguing that new evidence existed to establish that his trial attorney had made a timely objection to the prosecutor's use of peremptory challenges. Ariz.R.Crim.P. 32.1(e). Later, defendant amended his petition to argue the Arizona Supreme Court's holding in *Harris* was not based on a rule that Arizona courts had "firmly established and regularly followed." After an evidentiary hearing, the trial court denied relief.

Defendant then filed a motion for rehearing, preserving only the argument that the procedural rule used to bar his *Batson* claim was not "firmly established and regularly followed." Ariz.R.Crim.P. 32.9(a). When the trial court denied defendant's motion, he petitioned this court for review. Ariz.R.Crim.P. 32.9(c).

## DISCUSSION

Contrary to defendant's argument, we find that prior to defendant's trial, Arizona had a "firmly established and regularly followed" rule concerning the timeliness of objections to the jury selection process. This rule, first announced by the Arizona Supreme Court in *State v. Arnett*, 119 Ariz. 38, 579 P.2d 542 (1978), provides that a party who complains of an error in the jury selection process must object before the trial judge impanels the jury and excuses the venire; in the absence of such objection, a party waives his right to object to the composition of the jury. We conclude, therefore, that the trial court did not abuse

its discretion in finding that Arizona had a firmly established and regularly followed rule governing *Batson* objections.

In *Ford v. Georgia*, the Supreme Court held that although "a state court may adopt a general rule that a *Batson* claim is untimely if it is raised for the first time on appeal, or after the jury is sworn, or before its members are selected," that rule must be "firmly established and regularly followed" before a state court may use it to bar a federal constitutional claim based on *Batson*. *Ford*, 498 U.S. at 422–423, 111 S.Ct. at 857. The Court found the cited procedural rule was not an adequate state ground to bar review of the defendant's federal constitutional *Batson* claim. The Georgia case creating the procedural rule was not decided until more than two years *after* the defendant filed his appeal, and, according to the Georgia court, the rule was to be applied prospectively only. *Id.* at 424–425, 111 S.Ct. at 858. Thus, Georgia could not use its procedural rule to bar the defendant's *Batson* claim. The Court reaffirmed the holding in *Ford* a year later in *Trevino v. Texas*, —— U.S. ——, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992).

Unlike Georgia's rule, Arizona's procedural rule governing jury selection was firmly established before defendant's trial. Our rule provides that a party waives error in the jury selection process unless the party objects before the trial judge impanels the jury and excuses any venire member not impaneled. *See Arnett*, 119 Ariz. at 50, 579 P.2d at 554, *citing State v. Lee*, 114 Ariz. 101, 559 P.2d 657 (1976); *Midkiff v. State*, 43 Ariz. 323, 30 P.2d 1057 (1934). Furthermore, the Arizona Supreme Court consistently followed *Arnett* before defendant's trial. *See, e.g., State v. Ortiz*, 131 Ariz. 195, 200, 639 P.2d 1020, 1025 (1981), *cert. denied* 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982) (where defendant passed the jury panel without objection, defendant waived his right to complain about the jury composition on appeal), *disapproved on other grounds by State v. Richmond*, 136 Ariz. 312, 318–19, 666 P.2d 57, 62–63 (1983).

The Arizona Supreme Court has also followed *Arnett* since defendant's conviction

and direct appeal. *See State v. Walton,* 159 Ariz. 571, 769 P.2d 1017 (1989), *aff'd* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). In *Walton,* the defendant waited until after the trial judge impaneled the jury to object to certain comments made by the judge during the voir dire examination of the jury. The court held that defendant waived his right to challenge the trial judge's comments on appeal, stating: "Counsel must make his objection during voir dire or waive that right." *Walton,* 159 Ariz. at 581, 769 P.2d at 1027, *citing Arnett,* 119 Ariz. at 50, 579 P.2d at 554.

Here, defendant did not object to the prosecutor's use of the peremptory challenges until the day *after* the trial court impaneled the jury and excused the venire. Pursuant to the rule announced in *Arnett,* defendant waived the right to appeal based on *Batson. Ford,* 498 U.S. at 424, 111 S.Ct. at 857 ("a state may adopt a general rule that a *Batson* claim is untimely if it is raised ... after the jury is sworn, or before its members are selected" as long as the rule has been "firmly established and regularly followed").

Our conclusion is no less certain in light of the Arizona Supreme Court's failure in *State v. Harris* to cite to the *Arnett* rule. When the Arizona Supreme Court reviewed defendant's case on appeal in 1988, it cited as precedent from Arizona only *State v. Holder,* 155 Ariz. 83, 745 P.2d 141 (1987)— a case that did not cite to *Arnett*—for the proposition that a *Batson* issue does not constitute fundamental error "but must be raised at trial or it is waived." *Harris,* 157 Ariz. at 36, 754 P.2d at 1140. This omission is not significant because the United States Supreme Court had not yet decided *Ford.* The Arizona Supreme Court, therefore, had no need to demonstrate in *State v. Harris* that Arizona had a "firmly established and regularly followed" rule governing waiver of objections to jury selection. The court's citation to *Holder,* a case directly on point, was sufficient to decide defendant's appeal; its lack of citation to *Arnett* or later cases relying upon *Arnett* does not demonstrate that Arizona did not have a firmly established and regularly followed procedural rule requiring timely objections to the selection of a trial jury.

Finally, defendant argues that *Ford* requires that Arizona have a specific rule governing waiver of peremptory challenges, not merely a rule governing the jury selection process. We disagree. The jury selection process is a means by which both the defense and the prosecution use peremptory challenges to eliminate those prospective jurors who are either unsympathetic to their side or sympathetic to the opposition. LaFave and Israel, 2 *Criminal Procedure,* § 21.3 at 718 (1984); *see also Holland v. Illinois,* 493 U.S. 474, 480–82, 110 S.Ct. 803, 807–08, 107 L.Ed.2d 905 (1990) (peremptory challenges ensure the selection of impartial juries). Peremptory challenges are thus inherently part of the jury selection process. Consequently, although an Arizona court has not had to clarify, until now, *Arnett*'s application to peremptory challenges, we hold that the rule announced in *Arnett* applies generally to the jury selection process and to the assertion of a *Batson* claim attacking the use of peremptory challenges.

## CONCLUSION

For the foregoing reasons, we grant review but deny relief.

GERBER, P.J., and McGREGOR, J., concur.