COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Fitzpatrick and Annunziata
Argued at Richmond, Virginia


KENNETH BERNARD LEWIS
                                              OPINION BY
v.   Record No. 1314-96-2        JUDGE ROSEMARIE ANNUNZIATA
                                           NOVEMBER 4, 1997
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Donald W. Lemons, Judge

           James B. Thorsen (Thorsen, Marchant & Scher,
           on brief), for appellant.

           John H. McLees, Jr., Assistant Attorney
           General (James S. Gilmore, III, Attorney
           General, on brief), for appellee.



     Following a jury trial, appellant, Kenneth Bernard Lewis,
was convicted of second degree murder and the use of a firearm in
the commission of a felony.  On appeal, he contends that the
trial court erred in refusing to consider a Batson motion he made
after the jury was sworn and the remaining venirepersons were
excused.  Finding no error, we affirm.

     Following voir dire, a panel of twenty prospective jurors
stood ready to try appellant.  Peremptory challenges were made, a
jury of twelve was sworn, and the remaining venirepersons were
excused.  Appellant then, for the first time, raised a challenge
under Batson v. Kentucky, 476 U.S. 79 (1986), to the
Commonwealth's exercise of peremptory strikes.  The trial court
refused to consider appellant's motion on the ground that it was
not timely made.  In particular, the court noted that the jury

had been sworn and the remaining venirepersons excused.  The court further noted that appellant had the opportunity to raise his objection both before and after the time the clerk announced the peremptory strikes.[1]

The United States Supreme Court has not specifically defined temporal parameters for the making of a <u>Batson</u> motion.  Instead, the Court has left to the lower courts the decision to adopt timeliness rules.  <u>Ford v. Georgia</u>, 498 U.S. 411, 423 (1991) ("[A] state court may adopt a general rule that a <u>Batson</u> claim is untimely if it is raised for the first time on appeal, or after the jury is sworn, or before its members are selected."); <u>see also</u> <u>Batson v. Kentucky</u>, 476 U.S. 79, 99-100 n.24 (1986) (making "no attempt to instruct [lower] courts how best to implement [the <u>Batson</u>] holding").

Most courts, however, hold that a party must raise a <u>Batson</u> challenge prior to the time the jury is sworn and the remaining venirepersons are excused.  <u>See</u> <u>McCrory v. Henderson</u>, 82 F.3d 1243, 1249 (2d Cir. 1996); <u>United States v. Parham</u>, 16 F.3d 844, 847 (8th Cir. 1994); <u>Dias v. Sky Chefs, Inc.</u>, 948 F.2d 532, 534

_____

[1]Appellant proffered his <u>prima</u> <u>facie</u> case of discrimination, alleging that three of the four venirepersons whom the Commonwealth struck were African-Americans and that none of them had made comments or given answers during <u>voir</u> <u>dire</u> which would have provided a basis other than race for their exclusion.  On brief, appellant predominantly argues the merits of his <u>Batson</u> claim and the trial court's error in denying it.  It bears emphasis, however, that the trial court did not deny appellant's motion on the merits; rather, it refused to consider the motion.  The issue on appeal is whether, as appellant also contends, the trial court erred in refusing to consider his <u>Batson</u> motion.

(9th Cir. 1991); United States v. Romero-Reyna, 867 F.2d 834, 837 (5th Cir. 1989); Government of Virgin Islands v. Forte, 806 F.2d 73, 76 (3d Cir. 1986); Owen-Corning Fiberglass Corp. v. Henkel, 689 A.2d 1224, 1228 (D.C. 1997); State v. Parker, 836 S.W.2d 930, 935 (Mo. 1992); State v. Harris, 754 P.2d 1139, 1140 (Ariz. 1988); see also Ford, 498 U.S. at 422 ("The requirement that any Batson claim be raised not only before trial, but in the period between the selection of the jurors and the administration of their oaths, is a sensible rule.").  The rationale for such a rule is to prevent litigants from manipulating the judicial process and to promote judicial economy.  See McCrory, 82 F.3d at 1247 ("If . . . a Batson objection may be raised after the jury has been sworn and trial has begun, there can be no remedy short of aborting the trial.  This would permit the defendant to manipulate the system to the extreme prejudice of the prosecution and give the defendant a strong inducement to delay raising the objection until trial is underway."); Owens-Corning, 689 A.2d at 1228 ("Where . . . a party claiming a Batson violation is silent during voir dire and complains only after the venire has been dismissed and the jury has been sworn, it becomes difficult (if not impossible) for the court and counsel to recreate in their minds the circumstances of each strike."); Parker, 836 S.W.2d at 936 ("[S]ustaining a Batson challenge after discharge of the venire necessitates the calling of a new venire and the selection of a new jury, thereby delaying justice and wasting judicial time

and resources."); [2] <u>State v. Smith</u>, 791 S.W.2d 744, 747 (Mo. Ct. App. 1990) (After the swearing of the jury, "the defendant was . . . in jeopardy.  If the defendant's challenges were then sustained, the state's action supporting that ruling, arguably, could be characterized as prosecutorial misconduct.  It would be this misconduct which, in turn, would require a mistrial to be granted.  A mistrial caused by the state may preclude the defendant from again being put into jeopardy.  This result may not always be certain to occur.  The risk is great enough, however, to require defense counsel to challenge the state's peremptory strikes prior to the jury being sworn and prior to the remaining venirepersons being discharged."); <u>Harris</u>, 754 P.2d at 1140 ("When no objection is made until after the challenged jurors have been excused, the possibility for an immediate remedy for unconstitutional action has been lost.").

---

[2] Moreover, as the Court in <u>Parker</u> explained:

> Quashing the panel and commencing the jury selection process anew does not really correct the error.  The defendant is simply accorded a new opportunity to obtain a jury composed according to race-neutral criterion; the discrimination endured by the excluded venirepersons goes completely unredressed since they remain wrongfully excluded from jury service.
> Requiring defendants to make <u>Batson</u> challenges prior to the venire's dismissal, on the other hand, allows the trial court to determine whether a constitutional violation has occurred while there remains time to correct the error by disallowing the offending strike.

836 S.W.2d at 936.

4

In Virginia, a Batson motion is not waived by the defendant's failure to raise it prior to the swearing of the jury. Hill v. Berry, 247 Va. 271, 274, 441 S.E.2d 6, 7 (1994). Rather, Code § 8.01-352 allows a Batson motion to be made after the jury is sworn, but only with leave of court. Hill, 247 Va. at 274, 441 S.E.2d at 7.[3] We find no error in the trial court's decision to deny leave in the present case.

The record shows that appellant had ample opportunity to raise his Batson challenge before the jury was sworn and the remaining venirepersons were discharged.[4] The record shows that

[3]Code § 8.01-352(A) provides:

> Prior to the jury being sworn, the following objections may be made without leave of court: (i) an objection specifically pointing out the irregularity in any list or lists of jurors made by the clerk from names drawn from the jury box, or in the drawing, summoning, returning, or impaneling of jurors or in copying or signing or failing to sign the list, and (ii) an objection to any juror on account of any legal disability; after the jury is sworn such objection shall be made only with leave of court.

[4]In argument, appellant's counsel explained that, in order to avoid interrupting the trial judge who was proceeding quickly through the jury selection process, he deferred making his Batson motion in anticipation of the trial court's inquiry in accordance with the recommended procedure outlined in the Virginia Circuit Court Benchbook. He cites, in particular, the procedure directing the court to ask counsel after the juror strikes are announced and before the jury is sworn whether there are "any objections to the strikes or the panel." See, e.g., Cudjoe v. Commonwealth, 23 Va. App. 193, 199, 475 S.E.2d 821, 824 (1996); Benchbook Committee, Virginia Circuit Court Benchbook: Criminal 186 (Supp. 1995). He contends that the trial judge erred in failing to inquire whether he had any motions to make before the jury was sworn. To be sure, this protocol was not followed in appellant's case. However, while making such inquiry is

5

appellant knew which prospective jurors the Commonwealth struck prior to the strikes having been announced.  Manifestly, appellant knew which prospective jurors the Commonwealth struck as the strikes were announced, and he certainly knew which prospective jurors the Commonwealth had struck after the strikes were announced, the stricken jurors left their seats, and the jury assembled in the box.  Neither the record, nor appellant, suggests that information concerning the Commonwealth's strikes was unavailable to appellant at that time, and no reading of the record suggests that appellant was otherwise prevented from raising his challenge.  In short, appellant had all the information and opportunity he needed to raise his challenge before the jury was sworn and the remaining venirepersons dismissed.  As such, the record fails to support appellant's contention that the trial court should have granted him leave to raise his challenge.

By contrast, the circumstances the trial court faced in this case provided ample basis for its decision not to grant leave. The choice of remedy upon sustaining a <u>Batson</u> challenge lies within the discretion of the trial court.  <u>Coleman v. Hogan</u>, 254 Va. 64, 67-68, 486 S.E.2d 548, 549-50 (1997).  "The trial court

---

undoubtedly sound practice, the failure to follow recommendations for the conduct of a trial does not rise to the level of reversible trial error.  <u>See</u> <u>Clark v. Newport News Shipbuilding & Dry Dock Co.</u>, 937 F.2d 934, 939 (4th Cir. 1991) ("Neither <u>Batson</u>, nor its progeny, suggests that it is the duty of the court to act <u>sua</u> <u>sponte</u> to prevent discriminatory exclusion of jurors.").

is uniquely positioned to evaluate the circumstances in each case and to exercise its discretion" in deciding whether to reseat persons improperly struck from the jury panel or to discharge the venire and select a jury from a new panel. Id. at 68, 486 S.E.2d at 550. A trial court's exercise of discretion may be improperly cabined, however, if the challenge is made after the jury is sworn and the remaining venirepersons are discharged. At that point, the court cannot reseat a juror improperly stricken, and discharging the venire and beginning the process of jury selection anew may be compelled under the circumstances. Such a result will generally serve neither the public policy Batson seeks to advance, nor the fair administration of justice.

In this case, the timing of appellant's challenge limited the court's choice of remedy and frustrated the trial court's ability to address the equal protection violation appellant sought to remedy. See Parker, 836 S.W.2d at 936. At the juncture appellant attempted to challenge the Commonwealth's strikes of certain venirepersons, the court had discharged from service those very individuals. Although appellant's equal protection rights could be restored at that point by assembling a new panel, no redress of the discrimination endured by the jurors wrongfully excluded from serving could be achieved. See Parker, 836 S.W.2d at 936 ("The error at issue in a Batson challenge is, of course, the state's racially discriminatory use of peremptory strikes in violation of both the accused's and the excluded

7

venirepersons' equal protection rights." (citing <u>Powers v. Ohio</u>, 499 U.S. 400, 409 (1991)).

In addition to leaving the court an incomplete remedy with respect to the jurors improperly excluded, the untimely motion in this case limited the court's ability to weigh the expenditure of additional judicial resources and the ensuing, perhaps substantial, delay in the administration of justice which can follow a decision to strike the venire upon sustaining a <u>Batson</u> challenge.  When balanced against a record which makes manifest that, notwithstanding the <u>Batson</u> claim, the appellant was given a fair trial by a jury which was free from exception, it cannot be said the trial court's decision to preserve judicial resources and avoid a delay in the administration of justice constitutes an abuse of discretion.

In short, we find that the trial court did not abuse its discretion in denying appellant leave to raise <u>Batson</u> issues after the jury was sworn; therefore, we affirm the trial court.

<u>Affirmed.</u>