COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Bumgardner
Argued at Richmond, Virginia


DANIEL N. LENEAVE
                                        MEMORANDUM OPINION[*] BY
v.       Record No. 2197-03-2              LARRY G. ELDER
                                           OCTOBER 5, 2004
COMMONWEALTH OF VIRGINIA


                 FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Margaret P. Spencer, Judge

             David B. Hargett (Hargett & Watson, PLC, on brief), for appellant.

             Donald E. Jeffrey, III, Assistant Attorney General (Jerry W. Kilgore,
             Attorney General, on brief), for appellee.


        Daniel N. Leneave (appellant) appeals from a ruling denying his motion to withdraw his

guilty pleas.  On appeal, he contends the court's denial of the motion, made before sentencing,

was erroneous because the evidence established an official misrepresentation or mistake of fact.

We hold the evidence, viewed in the light most favorable to the Commonwealth, fails to

establish an official misrepresentation or mistake of fact that was material.  Thus, we hold the

court's denial of the motion to withdraw the guilty pleas was not an abuse of discretion, and we

affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

Pursuant to Code § 19.2-296, absent "manifest injustice," "[a] motion to withdraw a plea

of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of a

sentence is suspended . . . ."[1]  Settled principles provide that,

> "In the absence of statutory regulation or established practice,
> whether or not an accused should be allowed to withdraw a plea of
> guilty for the purpose of submitting one of not guilty is a matter
> that *rests within the sound discretion of the trial court* and is to be
> determined by the facts and circumstances of each case. . . .  [T]he
> motion should not be denied, if timely made, and if it appears from
> the surrounding circumstances that the plea of guilty was
> submitted in good faith under an honest mistake of material fact or
> facts, or if it was induced by fraud, coercion or undue influence
> and would not otherwise have been made."

Hoverter v. Commonwealth, 23 Va. App. 454, 463-64, 477 S.E.2d 771, 775 (1996) (quoting

Parris v. Commonwealth, 189 Va. 321, 324, 52 S.E.2d 872, 873 (1949)); see also Manning v.

Commonwealth, 22 Va. App. 252, 254-55, 468 S.E.2d 705, 706-07 (1996) (en banc).

---

[1] Code § 19.2-296 also provides that "to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea."
    Here, appellant first made his motion to withdraw *after* sentencing pursuant to a plea agreement.  However, the trial court exceeded its statutory authority by sentencing him to fifty years for second-degree murder, which crime carried a maximum penalty of forty years incarceration.  Appellant then filed a petition for a writ of habeas corpus challenging the sentence and also raising various claims of ineffective assistance of counsel.  The Virginia Supreme Court granted the petition only as to the excessive sentence and remanded for a new sentencing.
    Prior to appellant's sentencing anew in the circuit court, he moved to withdraw his prior plea of guilty, and the trial court denied the motion on the merits.
    On appeal, the Commonwealth "does not dispute the trial court's authority or jurisdiction to entertain the motion to withdraw the plea, even though the [Virginia Supreme Court granted] habeas relief . . . for the limited purpose of resentencing."  Citing In re Sutherland, 493 P.2d 857, 861 (Cal. 1972), the Commonwealth takes the position that when the Supreme Court vacated the original sentencing order, it returned appellant to "the *status quo ante* in which no final order had been entered in the trial court."  Thus, the Commonwealth posits that appellant was permitted to raise any issue he could have raised prior to entry of the initial sentencing order and, also, that he need not make a showing of "manifest injustice" required in order to challenge a guilty plea after a final order of conviction has been entered.  We assume without deciding that the Commonwealth's position accurately reflects the law, and proceed to examine the trial court's ruling on the merits of appellant's motion to withdraw his guilty plea.

"The court's finding as to the credibility of witnesses and the weight of the evidence in support of a motion to withdraw a guilty plea will not be disturbed unless plainly wrong or without evidence to support it." Jones v. Commonwealth, 29 Va. App. 503, 512, 513 S.E.2d 431, 435 (1999). Further, claims of ineffective assistance of counsel may not be raised in any kind of direct appeal, including one involving a court's refusal to allow a defendant to withdraw a guilty plea. See Hall v. Commonwealth, 30 Va. App. 74, 82, 515 S.E.2d 343, 347 (1999) (stating principle and considering claim of counsel's shortcomings only in context of whether plea was voluntary).

Here, appellant raises several claims amounting to assertions that his counsel was ineffective. Thus, they are not cognizable on direct appeal in this Court. See id. Further, to the extent these claims might properly be framed as relating solely to appellant's request to withdraw his guilty pleas rather than claims of ineffective assistance of counsel, the evidence in the record, viewed in the light most favorable to the Commonwealth, supports the trial court's denial of appellant's motion to withdraw his pleas.[2] The trial court was free to reject appellant's testimony about his understanding of the plea agreement as not credible based on the transcript of the plea colloquy and other evidence in the record.

---

[2] To the extent that collateral estoppel may be used offensively in a criminal proceeding following findings on the relevant facts during an earlier proceeding on a petition for a writ of habeas corpus, see Ashe v. Swenson, 397 U.S. 436, 443-46, 90 S. Ct. 1189, 1194-95, 25 L. Ed. 2d 469 (1970); Slagle v. Slagle, 11 Va. App. 341, 346, 398 S.E.2d 346, 349 (1990); see also Code § 8.01-660, several of the issues appellant raises in this appeal turn on factual findings that were resolved against him by the Supreme Court when it ruled on his petition for a writ of habeas corpus. However, the Commonwealth did not assert collateral estoppel in the trial court, and as discussed in the text, the evidence, viewed in the light most favorable to the Commonwealth, supports the implicit findings made by the trial court that appellant did not enter his guilty pleas under a mistake of material fact or facts. Thus, we need not consider whether the Supreme Court's findings in the habeas proceeding were binding on the trial court because the result is the same.

## A.

## IMPACT OF MULTIPLE FIREARMS CHARGES AND
## ALLEGED AGREEMENT TO SENTENCE WITHIN GUIDELINES RANGE

Appellant, who had at least one prior felony conviction, contends his attorney made erroneous representations regarding (1) the total sentence he might receive for multiple counts of possessing a firearm after having been convicted of a felony and (2) the sentences he would receive for the second-degree murder offense and concomitant use of a firearm in the commission of that crime. He argues these errors were material mistakes of fact requiring the trial court to permit him to withdraw his guilty pleas. However, the trial court was free to reject as not credible appellant's testimony that several firearms were found in his residence immediately after the victim was shot and that he believed, whether correctly or erroneously, that he faced "maybe 30 years in just gun charges alone" because he was a convicted felon in possession of several guns. The court was also free to reject the actual or proffered testimony of appellant, his father, and other individuals that appellant's attorney indicated he would receive a sentence of only 7 to 12 years if he pleaded guilty to second-degree murder.

Once the trial court rejected that evidence, the only evidence on these issues remaining in the record was the plea agreement itself and the court's plea colloquy with appellant and his attorney. The record established that appellant met with his attorney on at least four occasions prior to entering his plea. Neither the agreement nor the colloquy contained any evidence that appellant was operating under a mistake of material fact when he entered his pleas, and both contained affirmative evidence that appellant understood the court would "decide his fate."

The plea agreement specifically stated that, in return for appellant's pleas of guilty to second-degree murder and concomitant use of a firearm, the Commonwealth agreed not to bring charges against appellant for possession of a firearm by a convicted felon. Neither the agreement nor the colloquy gave any indication appellant possessed multiple firearms at the time of his

arrest or that he believed that, absent the agreement, he could have faced sentences totaling 30 years for such offenses.

As to appellant's alleged belief that he would be sentenced to serve no more than 12 years, the written plea agreement specifically states that appellant "will be sentenced by the Court on the charge of second degree murder and use of a firearm in the commission of a murder following the preparation of a presentence report, presentation of evidence and argument of counsel." The agreement makes no mention of the sentence appellant might expect to receive and contains no limitation on the court's ability to sentence him for the listed offenses of second-degree murder and use of a firearm.

Further, during the plea colloquy, the court queried both appellant and his attorney about appellant's understanding of the agreement. The court said to appellant, "[Y]ou will plead guilty to [second-degree murder] and the firearm charge." It then queried, "The court will decide your punishment, is that correct?" Appellant responded, "Yes." Appellant indicated he had discussed with counsel the maximum and minimum sentence in the sentencing guidelines, and his counsel confirmed both that they had discussed the sentencing guidelines and range and that appellant "understands the court will decide his fate."[3] Finally, a transcript of the August 20, 2001 sentencing hearing was not made part of the record for purposes of appeal. Thus, nothing in the

---

[3] It is certainly the better practice for a court's plea colloquy to specifically address the minimum and maximum sentences for the offenses to which a defendant is pleading guilty. See, e.g., Holler v. Commonwealth, 220 Va. 961, 963-64, 970, 265 S.E.2d 715, 716, 720 (1980) (noting defendant was "subjected to a most comprehensive and searching examination by the court to determine if the defendant understood the full import of a plea of guilty," which examination included a statement of the statutory sentencing range for the charged offense); see also Benchbook Comm., Judicial Conference of Va., Virginia Criminal Benchbook for Judges and Lawyers App-3 (2003-2004 ed.) (containing "Suggested Questions to Be Put by the Court to an Accused Who Has Pleaded Guilty or Nolo Contendere," "modeled after Form 6," and including question 18, "Do you understand that the maximum punishment for this crime is _____ years imprisonment . . . ?"). Although the plea colloquy in this case apparently failed to specifically address the minimum and maximum sentences, we hold the colloquy, viewed in its entirety, was sufficient to inform appellant that the court would determine the appropriate

record lends support to appellant's claim that his counsel's colloquy with the court at that proceeding showed confusion over the terms of the plea agreement. See Anderson v. Commonwealth, 251 Va. 437, 439, 470 S.E.2d 862, 863 (1996) (holding appellant bore burden of furnishing record sufficient to permit appellate review).

The court found that petitioner knowingly and intelligently entered his pleas of guilty, and it did not abuse its discretion in rejecting petitioner's later claim that erroneous advice from counsel regarding the possible sentencing range for second-degree murder or possession of a firearm by a convicted felon caused him to make an honest mistake of material fact requiring that he be allowed to withdraw his guilty pleas. See Hall, 30 Va. App. at 82, 515 S.E.2d at 347.

B.

CREDIBILITY OF DAUGHTER'S TESTIMONY AND OTHER EVIDENCE OF MALICE COMPARED TO APPELLANT'S CLAIM OF ACCIDENT

Appellant also contends that he was operating under a material mistake of fact entitling him to withdraw his guilty pleas because he erroneously believed (1) that his daughter's testimony would support a murder conviction, (2) that the Commonwealth could prove he fired his gun into the side door of appellant's house or the victim's car and that he threatened to burn down the house, and (3) that pleading guilty to murder was his best option despite his contention that the shooting occurred accidentally without malice. Again, the record, viewed in the light most favorable to the Commonwealth, fails to establish that any of these facts, even if erroneous, constituted a material mistake of fact requiring the court to allow appellant to withdraw his guilty pleas.

---

sentences. Cf. Lewis v. Commonwealth, 25 Va. App. 745, 750 n.4, 492 S.E.2d 492, 494 n.4 (1997) (holding court acted within its discretion in refusing to consider Batson challenge made after jury was sworn and that court's failure to follow the "recommended procedure outlined in the Virginia Circuit Court Benchbook" by asking for objections before swearing the jury did "not rise to the level of reversible trial error").

As to appellant's claim that he erroneously believed his daughter's testimony against him would have been credible and material to a conviction, appellant himself admitted that his daughter was present when he shot the victim. Although appellant's version of the shooting conflicted with the proffered testimony of his daughter--who reported appellant said, "I should just shoot you, bitch," immediately before he pulled the trigger and inflicted a fatal contact wound--appellant gave no other testimony and made no argument tending to indicate why a trier of fact should conclude his daughter's version of events was the one that was not credible. Appellant posed no objection at the plea hearing when the Commonwealth stated in its summary of facts that appellant said to the victim, immediately prior to firing the fatal shot, that he should shoot the victim. Appellant also gave no testimony or argument tending to indicate why his daughter would have had a motive to fabricate her version of events. Thus, appellant failed to establish that his initial belief in the credibility of his daughter's testimony was a mistake of material fact that induced him to enter into the plea agreement.

Appellant also challenges what he alleges are misrepresentations regarding two particular facts relevant to proving he acted with malice--first, that appellant threatened to burn the house down and, second, that appellant pointed a gun at the victim's companion, Steve Procise, and fired a shot into the side door of the house or car. The Commonwealth's evidence established that appellant threatened to burn *something*, although whether it was only Procise's belongings or also the house in which the belongings were located was not entirely clear from that evidence. Thus, this evidence supported the court's finding that the mistake of fact, if any, was not material.

Appellant also did not dispute that he was angry with Procise and the victim, threatened to "blast [Procise] full of holes," and fired a shot outside his residence in the presence of the victim and Procise. The Commonwealth's evidence did not establish in what direction that shot

was fired, and the trial court was not required to accept as credible appellant's testimony that he fired the shot into the ground. Thus, the record did not establish that the second challenged representation of fact was inaccurate or material.

Finally, appellant contends his attorney erroneously advised him to plead guilty to second-degree murder despite the fact that appellant maintained the shooting occurred accidentally without malice. However, the Commonwealth proffered sufficient evidence, which, if believed, would have supported convictions for second-degree murder and the concomitant use of a firearm. Further, the prosecution argued its evidence of the threats that appellant left on the victim's answering machine might have been sufficient to prove premeditation. Thus, recommending appellant enter pleas of guilty to second-degree murder despite his claim of accident was a reasonable trial strategy and did not constitute a mistake of material fact.

II.

For these reasons, we hold the evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's finding "that there was no honest mistake of material fact" to support appellant's request to withdraw his guilty pleas. Thus, we affirm the challenged convictions.

<u>Affirmed.</u>